[No. 1702–3. Division Three. February 23, 1977.]

THE STATE OF WASHINGTON, *Respondent,* v. LARRY
LEE NESTEBY, *Appellant.*

*Madison R. Jones,* for appellant (appointed counsel for appeal).

*Arthur R. Eggers, Prosecuting Attorney,* and *John S. Biggs, Deputy,* for respondent.

SWYTER, J.*—The defendant, Larry Lee Nesteby, appeals from his jury conviction of second–degree burglary.

At approximately 8:30 a.m. on Monday, December 16, 1974, the janitor of the Walla Walla VFW Club discovered that the door to the club manager's office had been forced open. The police investigated and found that a window in the building had been broken from the outside. Entry through the broken window would allow access to the club manager's office. It was discovered that a cashbox was missing from the office safe.

Later, on the same day, a Mr. Baumgart notified police that he found a metal box in the middle of a street, which contained a VFW Club money bag. The police "lifted" defendant's fingerprints from the bottom portion of the cashbox which was admitted into evidence as plaintiff's exhibit 3.

---

*Judge Gordon Swyter is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

Christine Doyle, the defendant's sole witness, testified that she met the defendant in November 1974, while working as a cocktail waitress at the VFW Club. One of her duties during an approximate 2-week period in November was to close the Club and put the money in the office. In doing this, she was occasionally assisted by the defendant who would hold the cashbox while she unlocked the office door.

Through cross-examination of Doyle and direct examination of the State's witnesses, it developed that the cashbox marked plaintiff's exhibit 3 was the quartermaster's cashbox which was handled only by the quartermaster of the VFW Club, whereas the cashbox to which Doyle made reference was the cocktail lounge box. Although both cashboxes were kept in the office safe, the cashbox from which defendant's fingerprints were taken was not the same cashbox handled by Doyle.

Defendant first contends that the trial court erred in allowing Mr. Childers, a State's witness, to relate to the jury the following conversation he had with the defendant in latter January or early February 1975.

A  . . . I asked him what he was up to, you know, what he had been doing, because I hadn't seen him for quite a while, and I asked him, I says, "Have you been up to your old tricks?" You know, referring to . . .

    Mr. Jones: Your Honor, I object . . .

    The Court: Don't tell us what he is referring to; just tell us the conversation.

Q  (By Mr. Eggers) Yes, just the conversation.

A  I asked him what he knew about it, or if anything, and he stated to me, "Have you read the paper?" And I said, "Yes." And he said, "Well does that answer your question?"

Q  "Read the paper"; did he tell you about what?

A  Yes, the VFW Club, and that's about the end of the conversation.

It is defendant's contention that the above testimony was prejudicial in that it was an indirect and improper method of (1) bringing into evidence defendant's prior criminal

record and (2) placing defendant's character in issue although he did not testify. We disagree.

A defendant must be tried for the offense charged, and generally, it is prejudicial error to introduce evidence of unrelated crimes for the purpose of proving defendant's guilt of the crime charged; nor can a defendant's character be put in issue except through his initiative. The quoted testimony is not violative of these well recognized rules. No reference is made to an unrelated and distinct crime; nor is any reference made to a prior criminal record or prior misconduct. Furthermore, the jury could logically infer that defendant's answer to Childers' question was an incriminating admission of guilt of the crime in question, and therefore admissible.

Second, defendant contends that statements by the trial judge during the defense witness' testimony are unconstitutional comments on the evidence. During Doyle's explanation of how the defendant assisted her in closing the club, she testified on direct examination as follows:

A  Sometimes like he'd hold onto the cash box while I unlocked the door, because the door is locked.

Q  You testified he carried this box or a box similar to this?

THE COURT: *Just a minute. She hasn't testified to that.* I don't want to comment on the evidence; it's up to the jury to remember.

A  Yes, I did hand it to him at one time.

Q  How many times did you hand it to him?

A  I only recall one specific time. . . . One time I handed it to him, but there's—it would have been—it's a small office. It would have been possible for anybody to touch it.

MR. EGGERS: Your Honor, I object.

THE COURT: *We are not talking about possibilities. Objection sustained.* . . .

Q  Mrs. Doyle, what did the cash box that you used look like in relation to that exhibit 3? Was it the same color as this one right here?

A  I don't know.

THE COURT: *She's already said she doesn't know.*

THE WITNESS: I don't know what it looked like. I have handled several cash boxes in the kind of work I do.

(Italics ours.)

 The purpose of the constitutional prohibition is to prevent the jury from being influenced by knowledge conveyed to it by the trial judge by words or actions as to his personal opinion regarding the credibility, weight, or sufficiency of some evidence introduced at the trial. *State v. Jacobsen,* 78 Wn.2d 491, 477 P.2d 1 (1970). Accordingly, the first remark would be an unconstitutional comment on the evidence if it was reasonably inferable by the jury that the judge believed or disbelieved the witness and prejudice resulted. *State v. Haye,* 72 Wn.2d 461, 433 P.2d 884 (1967); *State v. Bowen,* 12 Wn. App. 604, 531 P.2d 837 (1975). However, we find nothing in the trial judge's statement that could possibly be construed and interpreted as meaning that he disbelieved the witness. The judge merely corrected counsel's recollection of the witness' testimony. Furthermore, the judge immediately made it clear that "I don't want to comment on the evidence; it's up to the jury to remember." The judge emphasized this point in the written instructions to the jury. The jury is presumed to have followed the court's instruction. *State v. Cerny,* 78 Wn.2d 845, 480 P.2d 199 (1971).

A trial court, in passing upon objections to testimony, has the right to give its reasons therefor, *State v. Cerny, supra,* and therefore the trial court's second statement, "We are not talking about possibilities. Objection sustained." was not an unconstitutional comment on the evidence.

The third interjection, "She's already said she doesn't know," was made when the witness was asked if exhibit 3 was the same color as the cashbox handled by defendant. This was nothing more than an attempt to prohibit cumulative and repetitious testimony.

Third, defendant assigns error to that portion of instruction No. 5 which reads as follows:

Every person who shall unlawfully break and enter any such building shall be deemed to have broken and entered the same with intent to commit a crime therein, *unless such unlawful breaking and entering shall be explained by testimony satisfactory to the jury to have been made without criminal intent.*

(Italics ours.)

The defendant contends that the italicized portion of the instruction should not have been given in that it places an unconstitutional burden on the defendant to take the stand and prove his innocence. This contention has been rejected on numerous occasions. *State v. Reid,* 74 Wn.2d 250, 444 P.2d 155 (1968); *State v. Durning,* 71 Wn.2d 675, 430 P.2d 546 (1967); *State v. Livengood,* 14 Wn. App. 203, 540 P.2d 480 (1975); *State v. Taplin,* 9 Wn. App. 545, 513 P.2d 549 (1973). The rationale of these cases upholding the constitutionality of this instruction is that, in view of the facts and circumstances, the presumed fact—intent to commit a crime—is shown beyond a reasonable doubt to follow the proven fact—forcible breaking and entry.

The defendant argues that the cases cited are not controlling in that in each case the defendant was apprehended at or near the scene of the crime; whereas, any proof of defendant's breaking and entering in the instant case is entirely circumstantial. While we agree with defendant's characterization of the State's evidence, we find no error. His argument fails to perceive the evidentiary value of circumstantial evidence. It "may be just as telling and compelling" as direct evidence. *State v. Kroll,* 87 Wn.2d 829, 558 P.2d 173 (1976).

Finally, defendant contends there was insufficient evidence to support a conviction. The standard by which this court must review a case which is based entirely upon circumstantial evidence is whether there is substantial evidence tending to establish circumstances on which a jury's finding of guilt may be predicated. In making such a determination, we must assume the truth of the State's evidence

and view it most strongly against the defendant, allowing the State the benefit of all reasonable inferences. *State v. Smith,* 12 Wn. App. 720, 531 P.2d 843 (1975); *State v. Braxton,* 10 Wn. App. 1, 516 P.2d 771 (1973). Our review of the record convinces us that there was sufficient evidence to submit the question of the defendant's guilt to the jury. The jury's verdict will not be disturbed.

Judgment affirmed.

GREEN and MCINTURFF, JJ., concur.

Petition for rehearing denied March 29, 1977.

Review by Supreme Court pending February 3, 1978.