[No. 34260. *En Banc.* May 1, 1958.]

JAMES J. KEESLING, *Respondent and Cross-appellant*, v. THE CITY OF SEATTLE, *Appellant*.[1]

[1]Reported in 324 P. (2d) 806.

*A. C. Van Soelen, Glen E. Wilson,* and *John P. Harris,* for appellant.

*James J. Keesling, pro se.*

ROSELLINI, J.—The plaintiff is the owner of lots 12 and 7, Forshee's Sound View Villa, in the city of Seattle, which he acquired by deeds dated January 3, 1951, and February 9, 1951. His residence is located on lot 12, which fronts on 4th avenue northwest. Lot 7 is a vacant lot back of his residence, across which he has a view of Puget Sound, obstructed by a light pole at the southeast corner of lot 7 and by four electric wires strung from the crossarms of the pole. These wires extend across lot 7 and parallel to the west line

of lot 12, connecting to poles in a single line between the two rows of lots. The view is also obstructed by poles and wires strung along the west side of 6th avenue northwest, on which lot 7 fronts; and residences on 6th avenue northwest intervene between the plaintiff's residence and the view of the sound.

This suit was brought against the city of Seattle, as owner and operator of the electric power service known as Seattle City Light, the complaint stating three separate causes of action. Under the first cause of action, the plaintiff sought to recover damages for the alleged trespass of the pole and wires on lot 7, alleging that they also extended over lot 12. In the second cause of action, he asked that the defendant be required to remove a pole located opposite the center of lot 7, on the west side of 6th avenue northwest, which he alleged had been placed in that position for reasons of spite and not for reasons of utility. For a final cause of action, he alleged that the defendant, through its duly authorized agents, had promised that, if his house and other houses, which were served by the pole on lot 7, were rewired to connect with poles on 4th and 6th avenues northwest, the defendant would remove the offending pole on lot 7 and the wires attached thereto; that the residences had been rewired, at an expense to the plaintiff of $90.45, but that the defendant had refused to carry out its promise. The plaintiff prayed for an order requiring the defendant to remove the pole and wires on lot 7 and the "spite pole" opposite lot 7 on 6th avenue northwest. The plaintiff asked also that the defendant be enjoined from placing further poles in his view and from rearranging its wires so as to obstruct his view. The damages asked on the first cause of action were $6,203, and on the third cause of action, $90.45.

The defendant's answer was a general denial. The statute of limitations was not pleaded, and no objection was raised to any of the alleged causes of actions on the ground that a proper claim had not been filed with the defendant.

The action was tried to the court, which found that the plaintiff had been damaged by the trespassing wires in the

sum of one dollar a day for each day that the defendants had failed and refused to remove the pole and wires, beginning September 19, 1953, ninety days after the plaintiff had filed his claim for damages for the trespass with the defendant, and continuing until the pole should be removed. The court also gave judgment on the third cause of action for $90.45, but denied any injunctive relief. Approximately two weeks after judgment was entered, the defendant removed the pole and wires on lot 7.

Both the defendant and the plaintiff have appealed. The defendant urges that the court erred in its interpretation of the easement granted to the defendant's predecessor for the construction and maintenance of the transmission line on lot 7 and that it erred in granting a judgment for substantial damages when none were proved. The plaintiff on his cross-appeal insists that the damages were inadequate.

The defendant also objects to that portion of the judgment which awards damages in the amount of $90.45 for breach of contract, alleging that the action is barred because a proper claim was not filed for this item of damage. In the case of *International Contract Co. v. Seattle*, 74 Wash. 662, 134 Pac. 502, we held that, under the Seattle city charter requiring "all claims for damages" to be filed, the filing of a claim is a condition precedent to maintaining an action where the damages do not appear on the face of the contract. This is a claim of that nature. We find no mention of this item in the claim for trespass damages, either directly or by inference.

The objection to the finding of trespass and the damages flowing therefrom, which, though termed by the court "nominal," amounted to $1,328.45, deserves more serious consideration.

An easement along the rear of lot 7 was granted to Puget Sound Power & Light Company, on September 9, 1947, by the developers of Forshee's Sound View Villa. This easement was assigned to the defendant when it took over the operation of the utility. The pertinent part of the easement gives to the grantee:

." . . . the right, privilege and authority to construct, erect, alter, improve, repair, operate and maintain an electric transmission and distribution line, consisting of a single line of poles, with necessary braces, guys and anchors, and to place upon or suspend from such poles transmission, distribution and signal wires, insulators, cross-arms, transformers and other necessary or convenient appurtenances, across, over and upon the following described lands and premises situated in the County of King, State of Washington, to-wit:

"Lot 7, Forshee Sound View Villa as per plat recorded in Volume 42 of plats page 31 records of said county.

"The center line of said transmission and distribution line to be located as follows: One (1) foot west and parallel to the east line of said lots."

Because the deed provides that the center line of the "transmission line" is to be located one foot west of the east line of the lot, the trial court concluded that the easement could only be two feet in width. The pole erected was eighteen inches in width (three quarters of the width of the easement as found by the trial court), which, if the court's interpretation was correct, left only three inches on either side of the pole for crossarms. The crossarms which were constructed were seven feet in width.

■ The description of the easement, giving the right to construct crossarms, transformers, and other necessary and convenient appurtenances, placing the center line of the transmission line (defined as a single line of poles, with necessary braces, guys, and anchors) one foot from the boundary of the described property, but failing to specify the width of the easement, is therefore ambiguous. It was apparently the theory of the trial court that because no easement was granted on lot 12, the transmission line must be confined to lot 7. But that is not a necessary conclusion. The line which was constructed encroached upon lot 12, but its center was approximately one foot west of and parallel to the east line of lot 7. The deed did not place the center of the "easement" one foot from the line, but placed the center of the transmission line there. Therefore, if the deed is read literally, the line constructed conformed to the

description. The fact that, as constructed, the line en-croached upon a lot over which no easement was given, is immaterial.

■ It is well established that if a right of way is entered upon and used, the way becomes definite and fixed even though it may have been indefinite in its description. *Kalinowski v. Jacobowski*, 52 Wash. 359, 100 Pac. 852. In so far as the pole and crossarms were located on lot 7, they were within the authorization of the easement granted by the plaintiff's predecessor in interest, and to which his deed was subject, and the defendant was within its rights in maintaining them.

The evidence showed that at the time the plaintiff purchased his property and until the summer of 1953, the crossarm had extended some three and one-half feet over the southwest corner of lot 12; that the plaintiff and his neighbor, owner of lot 11, adjoining lot 12, had rewired their residences and had them connected to poles on 4th avenue northwest, and that, when this was done, the defendant had removed the wires encroaching over lot 12 and all but some six inches of the crossarm on that side of the pole. This six-inch arm constituted a technical trespass. There is also no allegation that the grantors of the easement on lot 7 were the owners of lot 12 at that time, and we do not consider the question of whether there may have been an implied grant of an easement on lot 12 for that reason. As we have stated, the statute of limitations was not pleaded in this action, and consequently it is necessary to consider whether the trespass which existed prior to the removal of the wires and a portion of the crossarm and the six-inch encroachment which remained thereafter, were shown to have damaged the plaintiff in the amount awarded by the trial court.

The award of damages was based upon a finding that the pole, and the wires which crossed lot 7 (and at one time, lot 12) obstructed the plaintiff's view. It has been seen that, by deed of grant, the defendant acquired, through its predecessor, the right to construct this transmission line, and necessarily, the right to obstruct the view from the adjoin-

ing lot, there being no contention that a right was ever created in, or reserved to, the owner of that lot to have the view remain unobstructed. For the invasion of lot 12, however, the plaintiff was entitled to such damages as he could prove. The encroachment, it has been seen, consisted of a crossarm and wires running parallel to other wires which were legitimately there.

It appears that the transmission line in question was installed for a public purpose. Under our cases, the invasion of lot 12 would not be regarded as a trespass, but as the taking of an easement under the power of eminent domain. *State v. Williams,* 12 Wn. (2d) 1, 120 P. (2d) 496; *Wong Kee Jun v. Seattle,* 143 Wash. 479, 255 Pac. 645, 52 A. L. R. 625; *Kincaid v. Seattle,* 74 Wash. 617, 134 Pac. 504, 135 Pac. 820.

The defendant has not seen fit to rely upon this theory, but whether the encroachment of the transmission line be regarded as a trespass, or the taking of a temporary easement, the damages, if any, are the same; if the invasion was permanent, the damages would be the reduction in market value due to its presence, and if it was temporary, the damages would be the cost of restoration and the loss of use. *Papac v. Montesano,* 49 Wn. (2d) 484, 303 P. (2d) 654. *Messenger v. Frye,* 176 Wash. 291, 28 P. (2d) 1023.

The plaintiff offered no evidence that his property had been reduced in market value or in use value, other than his own testimony that his view was obstructed; and he made no attempt to show that his view was obstructed more before the wires over lot 12 were removed than it was thereafter. Since the defendant had been granted the right to place and maintain an obstruction on lot 7, unless the presence of additional wires over lot 12 appreciably increased the obstruction, this trespass was *damnum absque injuria.*

There is in the record no evidence to support the trial court's finding that the plaintiff had been damaged in the sum of one dollar a day, beginning ninety days after his claim was filed. At that time, the six inches of crossarm extending over lot 12 was the only encroachment. The transmission line, as has been determined, did not illegally

encroach on the plaintiff's property, except for the six inches of crossarm which remained after the lines over lot 12 were removed in the summer of 1952.

■ Where pecuniary damages are sought, there must be evidence not only of their actuality but also of their extent, and there must be some data from which the trier of the fact can with reasonable certainty determine the amount. *Wappenstein v. Schrepel*, 19 Wn. (2d) 371, 142 P. (2d) 897.

■ Having established a technical trespass, the plaintiff was entitled to nominal damages. The damages awarded were substantial and have no basis in the evidence. By the same token, the contention in the plaintiff's cross-appeal that the damages are inadequate is without merit.

The judgment is therefore reduced to one dollar on the first cause of action, and reversed as to the second and third causes of action, and, as thus modified, affirmed. Neither party shall recover costs on this appeal.

ALL CONCUR.